UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 05-16306 |
| NELSON DUPLESSIS AND CONNIE ANN DUPLESSIS | CHAPTER 7 |
|     DEBTORS | SECTION "B" |

*****************************************************************************

| | |
|---|---|
| BARBARA RIVERA FULTON, TRUSTEE     PLAINTIFF | |
| VERSUS | ADV. P. NO. 07-1105 |
| BERTHA HILLARD LAWRENCE     DEFENDANT | |

## MEMORANDUM OPINION

This matter came before the court on the complaint of the Chapter 7 Trustee, Barbara Rivera Fulton ("Trustee") against Bertha Hillard Lawrence ("Ms. Lawrence") alleging six causes of action and seeking to recover property of the estate pursuant to 11 U.S.C. §§ 544, 547, 548, 550 and 551. At issue were transfers of real property and cash made between the debtor, Connie Ann Duplessis ("Mrs. Duplessis") and her mother, Ms. Lawrence.

Ms. Lawrence filed a motion for summary judgment which was heard on January 30, 2008. At that hearing the trustee did not object to the entry of summary judgment on counts four and five of her complaint; thus, the court granted the motion and dismissed counts four and five. The remaining four causes of action were set for trial on March 13, 2008. Prior to the trial, the parties agreed to stipulate to the facts and submit the matter for consideration on the briefs. For the reasons set forth below, the court dismisses counts one, two and three of the trustee's complaint. The court finds for the trustee on count six of the complaint, the cause of action

1

brought to recover the house for the debtor's estate under § 544(b) of the Bankruptcy Code.

**I.      Background Facts**

The controversy in this case centers around several transfers involved in two sets of transactions between the debtor, Mrs. Duplessis and her mother, Ms. Lawrence. By affidavits and briefs the parties have stipulated to the following relevant facts:

1. Ms. Lawrence was the owner of a house located at 1004-1006 Romain Street in Gretna, Louisiana (the "Property").

2. Mrs. Duplessis occupied 1006 Romain Street.

3. On August 31, 2004 Ms. Lawrence executed an Act of Cash Sale purporting to sell the property to Mrs. Duplessis for $81,500.

4. Simultaneously with the Act of Sale, Mrs. Duplessis executed the loan papers granting a mortgage in the amount of $65,200 in favor of Long Beach Mortgage Company.

5. Ms. Lawrence received from this loan closing $58,127.

6. On June 3, 2005 Mrs. Duplessis executed an Act of Donation purporting to transfer the property back to Ms. Lawrence.

7. On July 27. 2005 the debtors, Mr. And Mrs. Duplessis, filed a petition for relief under Chapter 7 of the U.S. Bankruptcy Code.

The Act of Sale, the Act of Donation, a settlement statement, and copies of several estimates or bids for work to be done on the house were submitted to the court along with affidavits executed

by Ms. Lawrence and Mrs. Duplessis in conjunction with the motion for summary judgment.[1]

As the court understands it, what generally happened between the parties is as follows: Ms. Lawrence owned the double, located in Gretna, Louisiana. Her daughter, Mrs. Duplessis resides in one half of that house at 1006 Romain Street, and her son and his family reside in the other half of the house at 1004 Romain Street; Ms. Lawrence lived elsewhere, at 1013 Romain Street. Ms. Lawrence wanted to do some repair work on 1004-06 Romain, but her only income, in the amount of approximately $670 per month, is from social security. Ms. Lawrence was advised that based on her income, she would not qualify for a loan to make the needed repairs to the property. The person who gave her this advice, another daughter, Delores Hillard, was a mortgage loan processor in Baton Rouge, Louisiana; Ms. Hillard also advised her mother that if she transferred the property to Mrs. Duplessis, then Mrs. Duplessis would be able to qualify for a loan secured by a mortgage on the property. The property was transferred through an Act of Sale on August 31, 2004, at the loan closing, and only Mrs. Duplessis signed the mortgage. The parties aver, however, that neither of them intended for this to be an actual sale, and that as between them, they intended the sale only to be a simulation for purposes of allowing Ms. Lawrence to obtain the loan. Ms. Lawrence and Mrs. Duplessis, through affidavits submitted to the court, aver that the proceeds of the loan were paid directly to Ms. Lawrence, and a settlement statement reflects that $58,127 was paid to the seller. The remainder of the loan proceeds were used to pay various settlement charges incurred in processing the mortgage such as the loan

---

[1] See P-13 and P-14 in the case docket. The note and mortgage of August 21, 2004 were not submitted with the pleadings so the court has had to reconstruct what those documents provided from the settlement statement of that date.

origination fee and other miscellaneous charges.[2] Both parties also swear that the repairs to the property were in fact completed using the loan proceeds. Ms. Lawrence has been making all of the payments on the mortgage although both the mortgage and the property were under Mrs. Duplessis's name; Ms. Lawrence has also continued to collect rent from the tenants of the property. In 2005, Mrs. Duplessis began to have some problems with her marriage, causing Ms. Lawrence to request that the title to the property be transferred back to her. On June 3, 2005, Mrs. Duplessis complied with this request by executing an Act of Donation, which Ms. Lawrence accepted. The debtors then filed a joint Chapter 7 petition on July 27, 2005.

The trustee timely filed this complaint on July 3, 2007 and is now seeking to recover the funds transferred to Ms. Lawrence on August 31, 2004 under 11 U.S.C. §§ 547(b) and 548(a)(1)(B) or through § 544(b) in conjunction with a revocatory action under Louisiana state law, pursuant to Article 2036 of the Louisiana Civil Code. The trustee is also seeking to recover the house under § 544(b) of the Bankruptcy Code in conjunction with Louisiana Civil Code Article 2036.

This seemingly simple set of facts has produced a lot of confusion on the part of the parties in trying to analyze the legal problems. The court has to keep in mind that there are two transactions but multiple transfers involved here, i.e., the August 31, 2004 sale by Ms. Lawrence to Mrs. Duplessis of the property, the simultaneous mortgage of the property by Mrs. Duplessis, and the payment of $58,127 to Ms. Lawrence at the closing is all one transaction. The second

---

[2] See settlement statement appended to (P-13). The settlement statement also indicates that the "contract sales price" of the property was $81,500. The difference between that and the loan amount of $65,200 is referred to in the document as a "gift of equity" in the amount of $16,300.

4

transaction consists of the donation of the property from Mrs. Duplessis back to Ms. Lawrence and the acceptance by Ms. Lawrence.

**II.     Legal Analysis**

    **A.     Whether the sale was a valid simulation.**

Ms. Lawrence's primary defense to the causes of action asserted by the trustee is that the act of sale transferring the house to her daughter was a simulation, citing *In re Zedda*, 103 F.3d 1195 (5th Cir. 1997). A contract is a simulation when, by the mutual agreement, it does not express the true intent of the parties.[3] If the true intent of the parties is expressed in a separate writing, that writing is a counterletter.[4] Under Louisiana law, an absolute simulation is when the parties intended that their contract shall produce no effect between them. That simulation, therefore, can have no effect between the parties.[5] Thus, under Louisiana law, the parties true intent is given effect. Because of basic principles of written and testimonial proof, however, the apparent transferor may not succeed in attacking an absolute simulation in the absence of a counterletter.[6] In the instant case, Ms. Lawrence, the transferor, does not allege that a counterletter exists documenting the true intent between the parties. The after-the-fact affidavits submitted by Ms. Lawrence and Mrs. Duplessis attesting that neither of them intended to actually transfer the property are not sufficient to prove a simulation. Thus, Ms. Lawrence's argument that the sale to Mrs. Duplessis was a simulation fails. In *Zedda*, upon which Ms.

---

[3] Louisiana Civil Code article 2025

[4] *Id.*

[5] Louisiana Civil Code Article 2026.

[6] Comment (b) to Article 2026.

Lawrence relies for her proposition that the sale was in fact a simulation, and thus, the property is beyond the reach of the trustee, there was a counterletter.  As noted above, under Louisiana law, a counterletter is essential to proving a simulation; *Zedda* is inapposite in this case.

### B. The trustee's causes of action to recover the loan proceeds.

Even though the $58,127 received by Ms. Lawrence at the closing was not a transfer from the debtor, the trustee seeks to recover it.  Section 547(b) of the Bankruptcy Code states:

> Except as provided in subsection (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
> (1)   to or for the benefit of a creditor
> (2)   for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3)   made while the debtor was insolvent;
> (4)   made–
>    (A)   on or within 90 days before the date of the filing of the petition; or
>    (B)   between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5)   that enables such creditor to receive more than such creditor would receive if–
>    (A)   the case were a case under chapter 7 of this title;
>    (B)   the transfer had not been made; and
>    (C)   such creditor received payment of such debt to the extent provided by the provisions of this title.

The trustee must prove all of the elements of § 547(b) in order to recover under that section.  Because the court has found that the sale of the property was not a simulation, that portion of the proceeds of the loan paid to Mss Lawrence was in satisfaction of the sales price.  Thus, the trustee cannot satisfy the second element of § 547(b), because the money was not paid for or on account of an antecedent debt.  The court also questions whether the payment of the $58,127 was a "transfer of an interest of the debtor in property" as required by the statute.  The trustee's cause of action under § 547 is therefore dismissed.

The trustee also seeks to recover the money paid to Ms. Lawrence for the purchase of the property under § 548(a)(1)(B), which reads:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the debtor was an unreasonably small capital; or
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Again, because the court has found that the sale was not a simulation, the trustee has not proved the elements necessary to avoid the transfer of the money to Ms. Lawrence in payment for the sale of the property. No evidence was shown that the purchase price was not a reasonably equivalent value, and the court notes that there is no evidence that the entire purchase price was even paid. The purchase price of the house was $81, 500, and the evidence showed that Lawrence received only $58, 127. Thus, the purchase price has not been paid in full to Ms. Lawrence.[7] The trustee's cause of action to recover the money paid to Ms. Lawrence under § 548 is therefore dismissed.

The trustee also seeks to recover the funds paid to Lawrence through § 544(b)(1) of the Bankruptcy Code, which states:

---

[7] As noted earlier, the settlement statement shows that there was a difference of $16,300 between the sale price of the property and the amount of the loan obtained by Mrs. Duplessis. The settlement statement refers to this amount as a "gift of equity."

7

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Section 544(b)(1) essentially gives the trustee the right to step into the shoes of an unsecured creditor and pursue causes of action to recover property through underlying state law. Here, the trustee seeks to use the revocatory action under Article 2036 of the Louisiana Civil Code, which states: "An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency." Again, however, this cause of action brought by the trustee must fail. The money was transferred to Ms. Lawrence as a part of the purchase price of the house, and was not an act which caused or increased Mrs. Duplessis's insolvency; in return for the loan obligation Mrs. Duplessis incurred, she received the house. On the face of the documents this was a fair exchange. Mrs. Duplessis was receiving a house worth something far more that the $58,127 actually received by Ms. Lawrence. Thus, the trustee's cause of action under § 544 of the Bankruptcy Code and Article 2036 of the Louisiana Civil Code for the August 31, 2004 payment to Ms. Lawrence is dismissed.

  **C.  The trustee's action to recover the house.**

The trustee's final cause of action is to recover the house that was transferred back to Ms. Lawrence by the act of donation dated June 3, 2005. The trustee brings this cause of action under § 544(b) of the Bankruptcy Code and Article 2036 of the Louisiana Civil Code. The criteria for this cause of action is stated above. Here, the court finds that Mrs. Duplessis did act to cause or increase her insolvency as she deprived the estate of an asset probably worth about

$81,500. Thus, the act of donation is annulled and the property reverts back to Mrs. Duplessis, and thus, the bankruptcy estate. It is, however, subject to the mortgage.

The court also finds, however, that because Mrs. Duplessis was not aware that the house was property of the estate when she filed her bankruptcy schedules, she will be given 15 days from the entry of the order accompanying this memorandum opinion to amend her schedules to list the house as an asset and to claim a homestead exemption for the property if, as it appears from the record, she was living in the house at the time of filing. Because the house was her property at the time the petition was filed, if she was living in the house she should be allowed to claim the exemption. The court further finds that Ms. Lawrence should be allowed 15 days from the date of the entry of the order accompanying this memorandum opinion to file a proof of claim for any amount still owed to her from the purchase of the house as well as for the amounts she has paid on the mortgage in Mrs. Duplessis's name, less rents she received during the relevant time period.

New Orleans, Louisiana, August 28, 2008.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge